and Mr. Balls, whenever you're ready, we'll hear from you. Your audience got a lot smaller, you know. But the important people are still here. Chief Judge Niemeyer, Justices Thacker and Motz, my name is Churchill Balls and I represent the Reynolds family, Caroline, Allison, and their mother Paige, appellants here before you today. Your Honor, we are here to argue the District Court erred in ruling there is sufficient evidence to support the oral agreement that was found at the lower court to cancel Mr. Reynolds, J.P. Reynolds, million-dollar life insurance policy. This was a breach of contract case when dismissed at the District Court level and the errors are alleged to apply to that count. But fundamentally, Your Honor, this case and the issues argued arise out of USAA's preset scheme to take away and retain premium refunds that are properly due at cancellation, while at the same time taking from the insured a contract benefit that is specifically provided in the terms of the contract, and that is the grace period. I say take away, Your Honor, because... Well, the grace period hadn't kicked in yet, had it, because we're talking about August 3rd and the premium due date wasn't until August 4th. Your Honor, the premium due date is one of the issues, big issues in this case, and that is the policy. You cannot determine a premium due date from reading the policy. The policy just does not fix a date. The policy says that the premium due date is measured from the enrollment date, which was on the 4th. That's the effective date, Your Honor. And all of the general authority, and we cite COMP as authority for this, the general rule is where the policy has an anniversary date, or an effective date, and it takes that date and fixes that for future premium payments, then you do fix a date by the policy. You know, you should overlook the intent of the parties to the contract. This man calls up and says to the insurance company, I want to cancel. The insurance company says, oh, no, you don't need to cancel and ask why, and then says, well, why don't you cut it down a little bit if you can't afford it. No, I want to cancel. It's clear.  And then they talk about the premium date, and they say, well, cancel effective today so your automatic payment on the 4th will not be triggered. He said, fine. This is all tape recorded, and it's confirmed by a written document, and both parties achieved what they want. Now, I don't understand why somebody can't cancel a policy which is recorded and transcribed and confirmed by a written document. This clearly was his intent, and he got what he wanted, and the company gave him what he wanted. I don't understand what the – you're trying to reverse what they clearly intended to do unequivocally and conclusively. Well, Your Honor, USAA from day one of the contract breaches the contract. The clear testimony of the agent who Mr. Reynolds spoke with is that the grace period does not apply to this contract. Well, the question is the grace period says – it says insured is entitled to a grace period in which the payment of any premium may be made. Now, it seems to me that grace period is something given to the insured in order to make up a default or delay in payment. This man didn't want to make any more payments. This man didn't want a grace period. He wanted to end the contract, and despite the insurance agent's response saying, are you sure you want to do it, he says yes. And then she tried to talk him into a few other things, and he said, no, I don't want to do it. And then they talked about, okay, we'll prevent you having to pay another $26 tomorrow and make it effective today. He says, that's just what I want. And then they sent a letter and confirmed it. Now, can it be any clearer? Your Honor, if looking at the call, the first thing he says on the call is, I want to cancel. Yes, right. And the last thing he says is, I want to cancel. He then entertains recommendations. So, effectively, he changes his mind. He doesn't change his mind at all. He entertains recommendations from her in order to keep something into effect. And he said, no, I want to cancel. Your Honor, that's getting into the fraudulent misrepresentations that USAA makes. She said, you're paid through tomorrow. He was not paid through tomorrow. He actually had 30 more days. It was the triggering effect. His account would be triggered tomorrow. He would automatically withdraw from his checking account. And they said, if you do it today, it won't be withdrawn. That's what they reached agreement. There's no fraud here. This is just such an overreach to call fraud. Judge, the agent said, when a policy is on auto pay, there is no grace period. So, as far as USAA was concerned, the contract provision that they are required to have. He doesn't want a grace period. He waived that. He said, I want to cancel. I do not want to pay a premium. The grace period is to pay the premium. It says, insured is entitled to a grace period within which the payment of any premium may be made. Yes, Your Honor. And he didn't know he had it because it had been taken away 10 years prior. He didn't want it. He wanted to get rid of the policy. Your Honor, we didn't know what he wanted because USAA had already taken the grace period away. But we do know what he wanted. You said it yourself. The first thing he said on the call was, I want to cancel my term life insurance. And then he says that at least four other times that he wants to cancel the policy. Are you disputing that he wanted to cancel the policy? I do not agree that he wanted to cancel by being forced into the preset and predetermined computer decision that had been made for him long before this call was made. USAA is not going to bring up the grace period because they've already discounted it. The agent says, the grace period... He didn't want a grace period. He wanted to cancel. Do you understand what that means? The grace period is an opportunity to pay late. It's also, Your Honor, an opportunity to change your mind. And he could have changed his mind. He clearly didn't want to change his mind. He didn't object. He got a letter and he didn't object. He lived for two more weeks, right? There's no evidence that he was dissatisfied with what happened. Your Honor... At all. There's no exception. The portrait designee said he could have changed his mind before midnight that night after the call. So USAA wants to say, well, we'll give you until midnight to change your mind. But we're not going to give you your grace period of 30 more days to change your mind. He could have had a heated conversation or something could have happened in his finances where he came back two weeks later and said, I tell you what, I'm going to send this payment in and I'm going to change my mind. But USAA decides, no, no, we're only going to give you until midnight, 15 more hours ago. Is there any evidence that he had any reservation about his decision? I think the fact that he was going to go over judge to a different department and talk about reduced premium... No, he wasn't going to go over to a different department. The USAA representative offered to transfer him to another department and he interrupted and said, let's skip that. Let's just cancel it. He didn't want to go over to another department. He said, no, let's just skip that and cancel it. Your Honor, I think that shows some uncertainty right there. He entertained him. He said, how much would that reduce? Okay, that was before the statement that I just read to you. He said, how much would it reduce? And then when they said, well, we'll transfer you to another agent to discuss that. He said, no, let's just skip that. Let's just cancel it. And then the agent said, okay, you want to just go ahead and cancel? And he says, yes. And that is the third time he says unequivocally he wants to cancel. Your Honor, the focus on what the insured wants, I think another case that's been decided in the Eastern District of Virginia, Yasko v. Aviva Life, is very important and it directly responds to what you've raised here today. And that is the insured sent a letter that says, I want to cancel immediately. Well, the court there said, after he sent the letter in, I think it was by fax. It may have been by mail, but I think it was by fax, Your Honor. The company received the letter, unequivocal, no question he wants to cancel. The company didn't respond until the day after he died. And that was the day of the first day of the grace period. And so the company said. But the fax are different here because the company did respond to his repeated request to cancel and canceled it the day before the grace period would have kicked in. Right, Your Honor. And I agree, the fax are crucial. And the agent here, when she was, when they were, I guess you'd say the crucial part of forming the abrogation agreement that Zurich and other cases talk about, she says, your timing was perfect. Whether you called today or calling today, it would have canceled or reduced tomorrow anyway. That's not accurate. It would not have canceled tomorrow only because USA decides for itself how to apply cancellations. They didn't explain that to him. They sure did. They explained to him that he didn't want to have his account charged on the fourth. Twenty six bucks. And she said, we'll do it today. He said, that's fine. Well, now what's what's what to me, there's such a uniformity of intent between him and the company and the exchange. And there's a confirmation. It says that he's canceling. He also doesn't want to. He clearly doesn't want to pay for the policy. He doesn't want to have the policy in effect. And he explains why. And so it's a uniform intent. It's what you're trying to reverse. This man's clear decision. There was no fraud on him. There was explanations trying to talk him out of it. And he said, no, I want to cancel. And he had his purposes. Apparently, he thought his kids had enough coverage already. And he didn't want to pay for this anymore. Well, your honor, I would say that Virginia law, which requires the grace period to take effect. You heard what I said on the read on the grace period. I was quoting from Virginia law. And it says and it says the insured has the right to a grace period. He did not want a grace period. He wanted to end the policy. Well, he's for the nonpayment of premium. And he isn't coming there and asking for help. I can't pay my premium. I want my grace period to kick in. He did just the opposite. But your honor, we've talked about. Yes, sir. We've talked about intent. The other part that's here that we've not talked about yet is consideration. And the way that USA processes cancellations totally does away with consideration that's required. I don't understand that at all. The company had a contract to provide a million dollars on his death. He agreed to pay the premium. In the cancellation, he obtained the right not to pay the premium. And the company obtained the right not to pay the policy on his death. Now, to me, a mutual consideration was just as clear as a bell. The benefit the company gets, it doesn't have to pay the policy. And the benefit the insured gets is he doesn't have to pay the premium. Your honor, the Prelimine case, which was affirmed by this court, that's not how the court ruled in its rationale. It found a debt that was owed. An insured had been getting coverage which he had not paid for. And so the line of cases there, starting with Zurich, the Virginia Supreme Court case, which talked about sufficient consideration. Those are modifications. Your honor, Prelimine and Freeman were both terminations. I know, but your quotations in your briefs were for modifications to a contract. Of course, you change a contract, you need new consideration. Both Prelimine and Freeman are contracts that required all changes to be in writing, which is what we have here. So they're applicable. The Britain and Kennedy case, which is cited by USAA in the lower court, is not that, your honor. That's just contractual releases are the consideration. And so, can I read from the affirmance? Excuse me, your honor, my time is up. Okay, you have some rebuttal. Mr. Becker. Good morning, may it please the court. Duncan Becker on behalf of USAA Life Insurance Company. USAA Life respectfully requests that you affirm the thorough and well-reasoned decision of Judge Hudson in the lower court. This case is straightforward, both on the facts and the law. The facts, Mr. Reynolds was the owner, payer, and insurer of his insurance policy. The policy's effective date was November 4th, 2010. That's the date that coverage comes into effect. And the effective date, JA-201, says that premium due dates, policy months, years, and anniversaries are measured from that date. Effective date is November 4th, monthly time period for premium due dates, 4th of the month. Plain, natural, common sense reading. And Mr. Reynolds knew that the 4th of the month was his premium due date. On August 3rd, 2020, the day before his next premium due date, he calls and speaks with USAA Life customer service representative Velma Rodriguez. As your honors noted, the first words out of his mouth after the introduction was, I want to cancel my term life insurance. Ms. Rodriguez gave him pushback and asked if he considered reducing coverage for his children. Mr. Reynolds said, no, they have other coverage, which was paid out upon his death through his... I have a question. How, if at all, does the requirement in the separation agreement that the deceased maintain insurance impact this case? That wasn't briefed below, and that's a contract between Mr. Reynolds and Ms. Paige Reynolds, so if there's any breach there, it would be a claim against the estate for a breach of contract. And USAA was not aware of the separation agreement, correct? I do not believe they had a copy of the separation agreement in advance of his cancellation, correct? And so he calls, he said, he gave, you know, Ms. Rodriguez gives him pushback and he says, no, let's skip that. Let's just cancel it. She tells him that we can cancel it effective August 4th because USA's policy, which my friend on the other side thinks is very bad, is USA Life processes cancellations and reductions at the end of the coverage period. So it wasn't a misstatement or fraudulent inducement or misrepresentation for her to say, oh, perfect timing, because if it was going to be canceled, it would have been tomorrow. That just reflects USA Life's policy that it processes cancellations at the end of the paid-to period. And that is what she advised him. And he said, perfect. Right there is a meeting of the minds, clears a bell, you know, objective manifestation of intent to be bound. That's the Lucy case. He also says, so I just don't need to pay the $127. Yes. And that is a reason for why he wanted to cancel, along with the fact that he had other coverage in place, which is why he clearly and expressly intended and wanted to cancel. And it's a unique situation here in that the living insured clearly expressed his intent and came to this agreement. And then the estate, which stands in his shoes, is now trying to repudiate and disavow that cancellation. And plaintiffs argue various theories of estoppel and a lot of different theories. But if anyone should be stopped here, it should be the estate. USA Life, Mr. Reynolds wanted to cancel. USA Life acted to its detriment by processing the cancellation. And that's at JA273 and 319. Maybe he sued the estate and tried to get him damages from the estate. Maybe they've already done that because he did have an obligation to maintain insurance as part of his divorce. But he basically decided, I'm not going to honor that. And he not only made that clear, he didn't want USA to notify her. And she said, no, you're the policyholder. You're the only one who gets notified. Yes, correct. And I am not specifically knowledgeable of the facts. I believe the divorce was not on the best terms. I do not know if there was a lawsuit brought by Ms. Paige Reynolds against the estate. Maybe Mr. Bowles could answer that. But in any event, the policy is canceled effective August 4th. And Mr. Bowles said that it was a scheme to take a premium refund away. Mr. Reynolds agreed to cancel his policy effective August 4th. At 930 on August 3rd, he agreed the coverage would run through the end of the day. And then once the clock strikes 12, coverage is done. The policy and all its provisions are canceled. He didn't ask, no, I want this canceled at 933 a.m. right now. And I want my premiums 127 a month. You know, it's 15 hours. It's about $2.60. He didn't ask for a $2.60 refund. He agreed that it would be canceled effective August 4th. And that is the agreement that was reached. Anything further? Yes, and she sent a letter confirming, as you've requested, we've canceled your policy effective August 4th. And he accessed his USA policy portal, saw that the contract was terminated, and he had no issue with it because that's what he wanted, intended, and desired. He passed away about two weeks later on August 17th, and appellants submitted a claim for the benefits, and USA Life advised them numerous times there's no benefits due because the policy was not in effect. Plaintiffs filed a complaint with the Virginia Bureau of Insurance. The Bureau of Insurance reviewed it and found no issue in that there was no, that USA Life correctly concluded that benefits were not due under the policy. So those are the facts, pretty straightforward, and now the law. One count, breach of contract. You need a contract, breach of a provision, damages. Summary judgment was totally proper here because there is no record evidence to support that a contract existed and necessarily, therefore, no breach of any nonexistent provision. Mr. Reynolds canceled his policy. No rational juror could find that there was a contract here, and Judge Hudson properly granted judgment as a matter of law for USA Life. Now, plaintiffs raised, or appellants raised various arguments for why they believe Mr. Reynolds could not cancel his policy. At bottom, their position is Mr. Reynolds, despite his clearly expressed intent, was prohibited from a matter of law from canceling his policy. That is just not the law. Two parties to a contract can mutually agree to cancel it. That is Hornbook contract principles. Now, plaintiffs make various statements that, well, Prilliman and Freeman required changes in writing just like this policy here. This wasn't a change that required to be in writing. No provision was changed. This was a cancellation, and USA Life's corporate designee testified about that at JA 759. He explained if he wanted to get rid of the military future insurability rider, that would be a change that needed a writing. But here, there was no change to any provisions, and appellants somewhat talk out of both sides of their mouth on this front where they concede there's no cancellation provision, but then they try to jam cancellation into the changes in writing, but that just simply, a change is not a cancellation. If I want to change the color of my house, you know, that's very different than canceling the house. Canceling is destroying it. And even if a change was required to be in writing, or the cancellation was required to be in writing, Prilliman, Freeman, and Virginia Supreme Court case law reflect that that provision does not matter. The two parties can agree to orally cancel. Now, my friend on the other side says that Prilliman and Freeman said all changes need to be in writing. That's a misstatement of those cases. The case says cancellation. There, the contract included an explicit cancellation provision. It didn't say changes needed to be in writing. It said cancellation needed to be in writing. We don't have that, but the point of the matter is two parties can mutually agree to orally cancel a contract, even if it says all changes need to be in writing. And here, two parties agreed, mutually agreed to orally cancel a contract, and there's a recording of it. So that's the end, right? That is our position. Now, there's a bit of a scattershot approach. Anything further you need to present? The point about the premium due date and the grace period. As your Honor has noted, a grace period is for overdue premiums. Mr. Reynolds had none. Now, they say that our representative testified that there's no grace period when he's on auto pay. That is a misstatement of the testimony. She was explaining that when he's on auto pay, there's a grace period in the provision, but it typically wouldn't kick in unless he had insufficient funds in his account. A grace period would apply if, let's say, it drew on his account and came back with insufficient funds. Then he would have gotten a grace. Notice as required by law, and you would have 31 days to pay the overdue premium. A grace period has no effect in this situation where the insured and owner calls to cancel, the Virginia Bureau of Insurance agreed, and I'm unaware of any cases that say a grace period gives you 31 days of free insurance after you cancel your policy. If your Honors have no further questions, I'm... Thank you. Mr. Faulds? Your Honor, addressing the consideration point, which that is the formation of the abrogation agreement in this case, I would like to distinguish between the two types of cancellations at issue, and which the lower court adopted the rationale of Britain and Kennedy, the 1921 Virginia Supreme Court case, which is nowhere cited in a lot of cases that start with Zurich, Virginia Supreme Court, and Zurich is then followed by Prilliman, and Prilliman is then specifically... Are you saying, as a matter of law, two parties to a contract like this one cannot cancel with mutual intent to cancel?  All right. Britain and Kennedy, it's a written contract to cancel another written contract. They entered a written agreement. I understand, but don't talk about other cases. Talk about this one. My question is, they both wanted to cancel, and you're saying they can't cancel? Is that the argument? They absolutely can, Your Honor, but they have to follow the law of this case. What else do they need to do? He called and said, I want to cancel, and I don't want to pay the premium anymore. She says, done, and they record it, have a transcript, and she said, I'm going to send you a confirmation. Fine, that's perfect. Have a good day. Confirmation comes through, no objection. Well, then, Your Honor, it should have been canceled at that moment. It's canceled. No, it was not, Your Honor. What difference does it make? Because if you let it run out till midnight, you're not issuing a premium refund. Now, Your Honor, you may think just in this one case... There's no premium refund. He did not want to trigger. This is what it says. It's going to stop the automatic payments of your life insurance policy. So that's what I'll do, and I'll send you a confirmation letter. Basic issue was, he was going to get hit with $127 charged to his account the next day. Automatic charge. And she said to cancel, I'll make it effective so that won't happen. I don't know if this is part of the agreement. But, Your Honor, yes, sir, I agree. But in Parliament, the judge specifically looked for and said, if a refund had been issued right then and there, there would be no... He didn't want a refund. He didn't ask for a refund. He just did not want to pay more premiums. But it's due, Your Honor, as a matter of law. If you end something, and there's a balance due, and the court said there would be no question whatever about the existence of valuable, complete, and adequate consideration if a premium had been issued right then and there. The judge didn't have that in that case. So the judge went on to... So what's the consequence? He didn't ask for a $2 or $3 refund. What's the consequence? Your Honor, the contract ran until midnight, and then like in Yasko via Viva Life, the grace period gave him 30 more days. Why do you keep doing this grace period when he didn't want the grace period? The grace period is for somebody who can't pay or didn't pay. Your Honor, it's a... He didn't want to pay. He ended his payment, and she agreed. It's a contract benefit, Your Honor, that's specifically in the contract. USAA can't decide when and where it's going to be applied to the insurer. No, but could the insurer decide he doesn't want the benefit? He could, Your Honor, yes. And why didn't he here? Well, Your Honor, I think you've got to go back to the beginning of the contract where USAA, when a policy is on autopay... What about the telephone conversation? Where he says, I want out. She says, we can do it right away. He says, fine. Well, he was... Your Honor, the grace period had been previously taken from him. He didn't even... They should have been sending him notices when it came in, when a premium was drafted later than, I guess, the fourth of the month, according to USAA. They should have been sending him notices when? Well, Your Honor, sometimes they drafted premiums from his account after the fourth. The fifth, the seventh, the eighth. Over the years, over ten years, they drafted it at various points. A notice was never sent. He never got billing notices. And the billing notices are what determine the grace period, trigger the grace period, if they send a bill. That's how the contract is worded. But again, Your Honor, we also submit that on the third when he called, that was the premium due date. It is not... No, she said, the USAA representative says, it looks like you are currently paid through August the fourth. Well, as in the Mahl case, Your Honor, the insured there tried, or the insured's family, tried to argue that the drafting date for premiums, which was after the contract premium due date, that should actually be the due date for calculating the grace period. The court in comp said... He didn't want a grace period. He wanted cancellation. And she said, during the conversation, after there's a delay of, a delay looks like of about six minutes, she comes back and said, so I've gone ahead and canceled your policy. It's done. She didn't say that. She said, I've canceled your policy. He said in response. Okay. Your Honor, if you had led me to believe that everything was going to end the next day anyway, and then said, well, we'll just... I just want to know what, what, what is your, uh, what relief do you want? In other words, he says, I want to cancel the policy. I don't want to pay the next premium. She says, fine, I'll fix it and do it. Okay. We agreed to do it. What do you, what relief do you want? That's what they did. You want to say what they did is not effective. I think they had to disclose to Mr. Well, I'm saying what relief, what relief do you want? He's not complaining about anything. He's the, he's the, uh, participant to the contract. He didn't complain about any part of this process. He didn't know the part of the process where he had a grace period was essentially concealed. He didn't want a grace period. He wanted to end. He wanted the policy to end. Well, the insured and Aviva Life also wanted that, Your Honor. And the court said, no. Um, he, he died eight days later, I believe. And so the court said in that case, they very, I think the opinion starts off there, Your Honor. Precision is crucial in setting a cancellation date. And, and I agree, Your Honor. And this is not precise. Well, she said, came back to the phone. I have canceled it, which was during that six minute period. Is that pretty precise? My time is. Go ahead and answer if you wish. It's not, Your Honor, because she's already said to him, oh, your timing was perfect. If you had wanted to reduce or cancel, it would have happened tomorrow. And when I first read that, I thought, well, what does that mean? Nothing was going to happen tomorrow. It would have just kind of gone into grace and he'd have had 30 more days to make up his mind. That's just not true. But the company had already disregarded his grace period. Both the corporate designee and the agent said, doesn't apply. No reason to bring it up to Mr. Reynolds. So they, they picked the next day and don't tell him that they're disregarding a contract benefit. That's not just in the statute, Your Honor. Let me ask you this. Isn't the grace period a grace from the failure to have made payment, timely payment of premium? Yes, sir. And I have no facts to support this. No, I'm just saying, if it's a grace period for the failure to pay a premium, is there any evidence in this record that he failed to pay a premium? Over the 10 years, Your Honor? No. In this record, is there any evidence that he failed to pay the premium? That he was delinquent on the premium? Well, they didn't draft it, Your Honor. So, no. No, as a matter of fact, to the contrary, he was on automatic payment arrangement, right? Yes, sir. All right. Okay. We'll come down and agree counsel adjournment today. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Stephanie D. Thacker, Diana Gribbon Motz